101 F.3d 685
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
Vincent J. MILITANO, Milton Sonneberg, John J. Cranley, Jr.,
Thomas Core, John Kolb, Carl Varrone, Defendants,
Robert Sayegh, Defendant-Appellant.
 No. 95-6407.
 United States Court of Appeals, Second Circuit.
 May 29, 1996.
 
 Appearing for Appellant: Robert Sayegh pro se, N.Y., N.Y.
 Appearing for Appellee: Eric Summergrad, SEC, Washington, D.C.
 S.D.N.Y.
 AFFIRMED.
 Before KEARSE, WINTER and CALABRESI, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York, and was argued by defendant-appellant pro se and by counsel for plaintiff-appellee.
 
 
 2
 ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgment of said District Court be and it hereby is affirmed.
 
 
 3
 Defendant Robert Sayegh appeals from a judgment entered in the United States District Court for the Southern District of New York following a bench trial before John F. Keenan, Judge, finding that Sayegh engaged in manipulation of the market for certain publicly traded securities, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1994), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (1995), promulgated thereunder. The court granted a permanent injunction prohibiting Sayegh from making fraudulent statements, engaging in fraudulent practices, or employing any device, scheme, or artifice to defraud, in connection with the purchase or sale of securities. On appeal, Sayegh contends principally that the injunction is improper because the evidence that he engaged in manipulation was weak, he had no record of prior securities violations, he had made no profit from the manipulations, and he is unlikely to engage in future violations. We are unpersuaded.
 
 
 4
 The trial court's findings of fact after a bench trial may not be overturned unless they are clearly erroneous. Fed.R.Civ.P. 52(a). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985); see United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949). Nor are we entitled to second-guess the trial court in its assessments of witness credibility. See, e.g., Anderson v. Bessemer City, 470 U.S. at 575 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").
 
 
 5
 There was evidence in the present case to support the court's findings that Sayegh knowingly participated in the scheme to manipulate the price of Institute of Clinical Pharmacology securities ("ICP") through his activities at Moore & Schley ("MS"), a brokerage firm in which Sayegh owned a three-percent interest. With respect to the period at issue, the record included evidence (1) that Sayegh knew that the net capital of MS was frequently precariously low, that MS was heavily invested in ICP, and that there was very little, if any, demand for ICP in the public market; (2) that MS dominated the market for ICP; and (3) that Sayegh orchestrated ICP's pricing by, inter alia, posting the exclusive high bid-and-ask prices for approximately half the period at issue, sharing the high bid-and-ask prices most of the rest of that time, buying large quantities of ICP on the open market, cross-trading between MS accounts in order to avoid having to sell ICP on the open market, sometimes refusing to sell ICP on the open market despite customer orders to the contrary, and directing traders at other firms to alter their ICP bid-and-ask prices. The district court's finding that Sayegh knowingly engaged in market manipulation was not clearly erroneous.
 
 
 6
 The trial court has broad discretion in deciding whether to grant or deny injunctive relief based on such violations, see, e.g., SEC v. Parklane Hosiery Co., 558 F.2d 1083, 1089-90 (2d Cir.1977), and such relief is particularly appropriate "[w]hen the violation has been founded on systematic wrongdoing, rather than an isolated occurrence," United States v. Carson, 52 F.3d 1173, 1184 (2d Cir.1995) (internal quotation marks omitted), cert. denied, 116 S.Ct. 934 (1996). Further, the court may properly view a culpable defendant's continued protestations of innocence as an indication that injunctive relief is advisable. See, e.g., SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1101 (2d Cir.1972).
 
 
 7
 In the present case, the district court found that Sayegh had committed knowing and egregious violations over a period of some 17 months, that he had refused to acknowledge the wrongful nature of his actions, and that his current employment in the securities industry presents opportunities for securities-law violations in the future. These findings are not clearly erroneous, and the court was well within its discretion in granting the injunction.
 
 
 8
 We have considered all of Sayegh's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.