**SECURITIES AND EXCHANGE COMMISSION, Plaintiff, Appellant,**

v.

**Michael G. SARGENT and Dennis J. Shepard, Defendants, Appellees.**

No. 02–1672.

United States Court of Appeals, First Circuit.

Heard Dec. 5, 2002.

Decided May 15, 2003.

Eric Summergrad, Deputy Solicitor, with whom Giovanni P. Prezioso, General Counsel, Meyer Eisenberg, Deputy General Counsel, and Michael A. Conley, Attorney Fellow, were on brief, for appellant.

Matthew C. Donahue, with whom Eno, Boulay, Martin & Donahue, LLP, was on brief, for appellee Dennis J. Shepard.

Gary C. Crossen, with whom Rubin and Rudman LLP, was on brief, for appellee Michael G. Sargent.

Before TORRUELLA, Circuit Judge, STAHL, Senior Circuit Judge, and HOWARD, Circuit Judge.

TORRUELLA, Circuit Judge.

Defendant-appellee Dennis J. Shepard illegally shared confidential information regarding an upcoming tender offer with defendant-appellee Michael G. Sargent, who profited by using the information to trade in the target's stock. Sargent recommended the target's stock to co-defendant Robert Scharn, who also realized profits on the trades. In a civil enforcement action brought by plaintiff-appellant Securities and Exchange Commission ("SEC") against Shepard and Sargent, a jury found the defendants liable for violating Section 14(e) of the Securities Exchange Act, 15 U.S.C. § 78n(e), and Rule 14e–3 thereunder, 17 C.F.R. § 240.14e–3 (2003). As a remedy, the district court disgorged the defendants of the illicit profits. The SEC appeals the district court's denial of injunctive relief, prejudgment interest, and civil penalties. After careful review, we affirm.

## I. Facts

In 1994, Purolator Products, a publicly held manufacturer of automotive parts, was the target of acquisition efforts by Mark IV Industries, Incorporated. Defendant Shepard and J. Anthony Aldrich (against whom the Commission did not file a complaint) were the sole shareholders of a consulting firm. Aldrich, a member of the board of directors for the target, had nonpublic information that Purolator and Mark IV were involved in negotiations re-

garding Mark IV's acquisition proposal. In July 1994, Aldrich shared the information with Shepard. Shepard agreed not to disclose the information and indicated that he understood his obligation to maintain its confidentiality.

On Saturday, September 10, 1994, Shepard told Sargent, his friend and dentist, that Aldrich was on the Purolator board and he stated, "I am aware of a company right now that is probably going to be bought," but "even if I had the money I can't buy stock in this company because I am too close to the situation." The following Monday, Sargent contacted his broker and asked him to do some research on Purolator. Sargent thereafter purchased a total of 20,400 shares of Purolator. Sargent also notified his close friend Scharn of his purchases in Purolator. Scharn then purchased 5,000 shares of Purolator. Within a few days of the tender offer announcement, Sargent sold all of his Purolator stock at a profit of $141,768. Scharn sold his shares at a profit of $33,100.

The SEC filed the current action in March 1996, charging Shepard, Sargent, Scharn, and a fourth defendant with tipping and/or trading in violation of Exchange Act Section 10(b), Rule 10b-5, Section 14(e), and Rule 14e-3 and seeking injunctive relief, disgorgement, prejudgment interest, and civil penalties. The district court granted the defendants' motion for a directed verdict, holding that there was insufficient evidence that Shepard tipped Sargent on the evening of September 10, 1994. The SEC appealed that decision as to Shepard, Sargent, and Scharn (but did not appeal as to the fourth defendant), and in late 2000 this Court remanded the case for a new trial in October 2001. *SEC v. Sargent*, 229 F.3d 68 (1st Cir.2000). On remand, the jury found Shepard and Sargent liable for violations of Section 14(e) and Rule 14e-3 but did not find them liable for violations of Section 10(b) and Rule 10b-5. The jury found Scharn not liable on all counts.

On March 27, 2002, the district court issued an amended final judgment ordering Sargent and Shepard jointly and severally liable for disgorgement of Sargent's and Scharn's trading profits, a total of $174,868. The court declined to enter an injunction against future violations. The court also refused to order the defendants to pay prejudgment interest on the disgorgement amount and to assess penalties pursuant to the Insider Trading and Securities Fraud Enforcement Act of 1988 ("ITSFEA"), codified in Section 21A(a) of the Exchange Act, 15 U.S.C. § 78u–1(a). This appeal of the district court's denial of an injunction, interest, and penalties followed.

## II.   Standard of Review

In an SEC enforcement case, we review the district court's decision regarding injunctions, prejudgment interest, and civil penalties for abuse of discretion. *Riseman v. Orion Research, Inc.*, 749 F.2d 915, 921 (1st Cir.1984). Under this rubric, "[a]buse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988). Further, "a district court abuses its discretion if it incorrectly applies the law to particular facts." *Am. Bd. of Psychiatry & Neurology v. Johnson–Powell*, 129 F.3d 1, 3 (1st Cir.1997).

## III.   Injunctive Relief

The SEC argues that the district court relied on an erroneous legal standard in

refusing to grant an injunction against future violations of securities laws. The agency claims that the court believed that defendants must pose a "relatively imminent" threat of recidivism in order to justify permanent injunctive relief. We disagree, finding instead that the district court reached the proper conclusion under the correct standard.

■ The Securities and Exchange Act permits the SEC to seek an injunction in federal district court to prevent violations of securities laws. 15 U.S.C. § 78u(d) (2003). Such an injunction is appropriate where there is, "at a minimum, proof that a person is engaged in or is about to engage in a substantive violation of either one of the Acts or of the regulations promulgated thereunder." *Aaron v. SEC*, 446 U.S. 680, 700–01, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). This court has upheld issuance of injunctions in cases where future violations were likely. *See, e.g., SEC v. Fife*, 311 F.3d 1, 8–9 (1st Cir.2002); *accord SEC v. Ingoldsby*, Civ. A. No. 88–1001–MA, 1990 WL 120731, *8 (D.Mass. May 15, 1990) (issuing an injunction where there is a "reasonable likelihood" that the defendants will violate the same law again). The district court, although it did not provide a detailed basis for its decision, properly articulated the legal standard for issuance of an injunction as reasonable likelihood of recidivism, not an imminent threat of it.

■ The reasonable likelihood of future violations is typically assessed by looking at several factors, none of which is determinative. *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir.1984). Courts consider, among other things, the nature of the violation, including its egregiousness and its isolated or repeated nature, as well as whether the defendants will, owing to their occupation, be in a position to violate again. *Id.; SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1228 (D.C.Cir.1989); *SEC v. Universal Major Indus. Corp.,* 546 F.2d 1044, 1048 (2d Cir.1976). The courts also take into account whether the defendants have recognized the wrongfulness of their conduct. *SEC v. Manor Nursing Ctrs.,* 458 F.2d 1082, 1100–01 (2d Cir.1972).

■ Under these factors, the district court acted within its discretion in denying an injunction with respect to Shepard. Shepard disclosed confidential information to Sargent, but this was a first-time violation. *Cf. Ingoldsby*, 1990 WL 120731, at *5 (indicating that even a "past violation by the defendant does not demonstrate a realistic likelihood of recurrence"). As the SEC admits, Shepard's violation was not an egregious one, particularly where he neither traded on the information himself nor derived any direct personal profit. *See, e.g., SEC v. Sayegh*, 906 F.Supp. 939, 948 (S.D.N.Y.1995), *aff'd sub nom. SEC v. Militano*, 101 F.3d 685 (2d Cir.1996) (finding conduct egregious where defendant "accomplished the manipulation by buying and having other market makers buy" shares); *SEC v. Lorin*, 877 F.Supp. 192, 201 (S.D.N.Y.1995), *vacated in part on other grounds by* 76 F.3d 458 (2d Cir.1996) (finding defendant acted egregiously where, "breaching his fiduciary duties to his customers pursuant to the Agreement, [he] caused his customers' accounts at E.F. Hutton to have a negative net worth of $1.8 million by November 1987, just after the collapse of the scheme"). Further, his current position as president of a webcasting company does not put him in a position where future violations are likely. *Cf. SEC v. Shapiro*, 494 F.2d 1301, 1308 (2d Cir.1974) (affirming grant of injunction where defendant's "regular business as a 'corporate marriage broker' " will likely expose him to "many temptations in the future."). We therefore affirm the denial of an injunction against Shepard.

With respect to Sargent, there was also no abuse of discretion on the part of the district court in denying an injunction. Sargent's violation was isolated and unsophisticated: he simply put two and two together and, based on a casual conversation, invested in one company without attempting to conceal his trades. Sargent is unlikely to be privy to insider information either through his occupation as a dentist or because of his wife's position as a consultant. Further, Sargent's acceptance of the jury verdict without further appeal is sufficient acknowledgment of the wrongfulness of his conduct. The district court's denial of an injunction against Sargent is affirmed.

## IV. Prejudgment Interest

The SEC argues that, although the lower court correctly held Sargent and Shepard jointly and severally liable for disgorgement, it erred in refusing to assess interest covering the prejudgment period. "Prejudgment interest, like disgorgement, prevents a defendant from profiting from his securities violations." *SEC v. O'Hagan,* 901 F.Supp. 1461, 1473 (D.Minn.1995), *reversed on other grounds United States v. O'Hagan,* 521 U.S. 642, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997). Courts have recognized that an assessment of prejudgment interest, like the disgorgement remedy, "is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws." *SEC v. Grossman,* No. 87 Civ. 1031, 1997 WL 231167, *11 (S.D.N.Y. May 6, 1997), *aff'd in relevant part SEC v. Hirshberg,* 173 F.3d 846 (2d Cir.1999).

"The decision whether to grant prejudgment interest [is] confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071–72 (2d Cir.1995). An award of prejudgment interest is based on consideration of a variety of factors, including "the remedial purpose of the statute [involved], the goal of depriving culpable defendants of their unlawful gains, and ... unfairness to defendants." *SEC v. First Jersey Securities,* 101 F.3d 1450, 1477 (2d Cir.1996). On appeal, a denial of prejudgment interest will only be reversed if it "was either so unfair or so inequitable as to require us to upset it." *Blau v. Lehman,* 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962). In *Riseman,* this Court held that

> [a]mong the factors to be considered in weighing the equities are the willfulness of the insider's violation, the type and degree of the insider's inadvertence, the position of the insider in the corporation, the length of time between the purchase and the repayment, and other circumstances of the case. Bad faith need not be shown.

749 F.2d at 921.

In this case, the balance of the equities weighs in Shepard's favor and counsels against awarding prejudgment interest. Shepard, who was not an insider at Purolator, divulged inside information to Sargent on one isolated occasion, and did not himself execute any trades based on the information. He neither profited directly from trading nor did he have access to Sargent's or Scharn's ill-gotten profits during the extended proceedings in this case. While "the fact that [he was] not unjustly enriched does not, standing alone, make it inequitable to compel [him] to pay interest," it does suffice to find a denial of interest equitable. *Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d 77, 87 (2d Cir.1980); *but see SEC v. Rubin,* No. 91 Civ. 6531, 1993 WL 405428 (S.D.N.Y. Oct.8, 1993) (declining to impose prejudgment interest on tipper who did not trade or profit from

trading on inside information because such interest would constitute an unjust penalty). Given the circumstances of this case, we find that the district court acted within its discretion in refusing to award prejudgment interest with respect to Shepard.

■ We find it less obvious that the equities favored denial of prejudgment interest in Sargent's case, but we affirm the decision. Although we might have reached a different result had we been the trial judge, we cannot say that it constituted an abuse of discretion not to award prejudgment interest on Sargent's trading profits. Sargent profited from his illegal trades in 1994 and did not have to disgorge the profits until 2002, thus he essentially received an eight-year, interest-free loan of those profits, in the amount of $114,093. *See, e.g., SEC v. Moran,* 944 F.Supp. 286, 295 (S.D.N.Y.1996) ("Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of

illegal activity."). Here, the jury found that Sargent acted with scienter, his conduct was not inadvertent, and he had the use of the money for a substantial period of time. However, neither the parties' briefs nor our own research revealed a rule requiring award of prejudgment interest in situations such as this one.[1] Although we may disagree with the district court as to which way the equities tip, our hands are tied by the standard of review. We thus affirm the district court's denial of prejudgment interest for both Shepard and Sargent.

## V. Civil Penalties

■ Finally, the SEC seeks reversal of the denial of Congressionally-provided civil penalties, which can amount to a maximum of three times the illicit profits realized (or losses avoided), and are intended to "penalize [the] defendant for ... illegal conduct." *See* H.R.Rep. No. 98–355, at 7 (1983).[2] In evaluating whether or not to

---

1. We found no case holding that an award of disgorgement must always be accompanied by an award of prejudgment interest, although many courts that order disgorgement "routinely also order payment of prejudgment interest." *O'Hagan,* 901 F.Supp. at 1473; *see also SEC v. Tome,* 638 F.Supp. 638, 639 (S.D.N.Y.1986), *aff'd,* 833 F.2d 1086 (2d Cir.1987); *SEC v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978) (stating that "court's power to order disgorgement extends ... to the amount with interest by which the defendant profited"). Disgorgement and prejudgment interest, while both aimed at depriving a defendant of ill-gotten gains, are nonetheless distinct remedies and cases repeatedly analyze them separately, frequently referring to the broad discretion of district courts to decide whether to award prejudgment interest. *Cf. SEC v. Stephenson,* 732 F.Supp. 438, 439 (S.D.N.Y.1990) (awarding prejudgment interest in separate opinion and order and referencing discretionary nature of the remedy).

2. As Congress explained when it first adopted civil penalties for insider trading:

The principal, and often effectively only, remedy available to the Commission against insider trading is an injunction against further violations of the securities laws and disgorgement of illicit profits. Although an injunction subjects a defendant to possible criminal contempt proceedings if he violates the law again, the injunction itself serves only a remedial function and does not penalize a defendant for the illegal conduct. Disgorgement of illegal profits has been criticized as an insufficient deterrent, because it merely restores a defendant to his original position without extracting a real penalty for his illegal behavior. The risk of incurring such penalties often fails to outweigh the temptation to convert nonpublic information into enormous profits. H.R.Rep. No. 98–355, at 7–8. When Congress reaffirmed and expanded the penalties in ITSFEA in 1988, it commented: "The creation of a new civil penalty was intended to go beyond disgorgement of illegal profits to add the imposition of a significant fine as a needed deterrent." H.R.Rep. No. 100–910, at 11 (1988).

assess civil penalties, a court may take seven factors into account, such as: (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the defendant's financial worth; (4) whether the defendant concealed his trading; (5) what other penalties arise as the result of the defendant's conduct; and (6) whether the defendant is employed in the securities industry. *See SEC v. Yun,* 148 F.Supp.2d 1287, 1295 (M.D.Fla.2001); *SEC v. Falbo,* 14 F.Supp.2d 508, 528–29 (S.D.N.Y.1998).

■ Applying these factors, we find no reason to reverse the district court with regard to civil penalties for Shepard. Shepard's violations consisted of a one-time tip to Sargent, and, as stated above, he did not personally realize any trades or direct profit. He, therefore, is left $174,868 worse off than he was prior to the activity for which he is liable.[3] Further, he is not directly involved in the securities business, and he cooperated with and responded honestly to authorities. Finally, Shepard's financial net worth is not so high as to require civil penalties.[4]

■ Applying the *Yun* factors to Sargent, we also find that the district court acted within its discretion in refusing to assess civil penalties. Sargent was an outsider who made no efforts to conceal his isolated transaction, which involved trading in the same stock during a short period of time and, as discussed in part III above, was not an egregious violation of securities laws. He is not employed in the securities industry. While he may have a high net worth,[5] that factor alone does not merit reversal of the district court's denial of civil penalties. Further, Sargent was criminally convicted for his actions, and the sanction imposed in the criminal case—a year's probation and a $5,000 fine—also tempers the need for an additional monetary penalty.[6]

## VI. Conclusion

The judgment of the district court is *affirmed* with respect to the denial of an injunction, denial of prejudgment interest, and denial of civil penalties against Shepard and Sargent. Costs are assessed against the government.

---

**3.** The fact that the entire disgorgement amount that Sargent and Shepard are jointly and severally liable for might, in theory, be paid in full by Sargent is irrelevant. It cannot be said with any certainty that a monetary penalty imposed as a joint and several penalty will be paid in full by one singular defendant, essentially rendering the joint and several liability moot.

**4.** There were no explicit findings below as to Shepard's financial worth, but a settlement letter sent to the district court judge contained information regarding his available assets and annual salary.

**5.** As with Shepard, the district court had access to information about Sargent's net worth, but made no explicit findings in this respect.

**6.** Sargent would have us view his legal expenses, which totaled over $245,000 as of December 2001, as an additional mitigating factor. We refuse to do so because, as a matter of public policy, legal costs borne by a defendant should not be used to offset any penalty that would otherwise apply. We do note, however, that knowledge of high defense costs would, in practical terms, likely serve as a deterrent to future violations.