## SECURITIES AND EXCHANGE COMMISSION, Plaintiff

v.

### Robert D. HAPP, Defendant

### No. CIV.A. 00–12051–REK.

United States District Court,
D. Massachusetts.

Nov. 25, 2003.

---

Gregory S. Gilman, John T. Dugan, Kimberly M. Zimmer, Madeleine McGrath

Blake, Martin F. Healey, Sandra J. Bailey, Securities and Exchange Commission, Boston, MA, for Securities and Exchange Commission.

Gary C. Crossen, Rubin & Rudman LLP, Peter M. Casey, Stephen C. Wameck, Foley Hoag LLP, Boston, MA, for Robert D. Happ.

Opinion

KEETON, Senior District Judge.

### I. Introduction

This is a civil enforcement proceeding brought by the Securities and Exchange Commission (SEC) against Robert D. Happ. After extensive pretrial proceedings, the case proceeded to jury trial and a special verdict in the form of answers to questions under Rule 49(a) of the Federal Rules of Civil Procedure. After post-verdict motions, filed submissions, and oral argument on October 29, 2003, the case is now before the court for determination of appropriate relief.

For reasons explained in Part II of this Opinion, I allow a defense motion for sanctions because of unwarranted refusal of SEC counsel to accept a proposed stipulation on authenticity of telephone billing records and inappropriate argument by SEC counsel to the jury. I conclude sanctions against SEC in the amount of $87,036.63 to be appropriate.

The part of this sanction that is monetary is included in the Final Judgment as an award in favor of Happ against the SEC. I conclude also, as explained in Parts III–VII of this Opinion, that the appropriate relief for SEC against Happ is a declaratory judgment of violation of SEC insider trading rules and a monetary award (including civil penalty) against the defendant of $85,242.63, plus prejudgment interest.

Rather than a provision for offset in the ordinary sense, I conclude that a form of stay of execution of the judgment in part is appropriate.

## II. Defense Motions for Sanctions

### A. Unwarranted Refusal to Stipulate to Authenticity of Telephone Records

■ One of the key allegations in SEC's Amended Complaint in this case is the following:

On Thursday, June 25, 1998, just five days prior to the close of the Third Quarter, [Hanley] telephoned Happ at his [Happ's] Weston, Massachusetts residence and left a voice message for him [Happ]. [Hanley] informed Happ, in that voice message, that he needed to meet with him [Happ] the following Monday or Tuesday to discuss Galileo's Third Quarter difficulties. The CEO [Hanley] attempted to convey in his message to Happ that the difficulties were serious.

Amended Complaint, Docket No. 19 (filed April 6, 2001), ¶ 18.

On August 1, 2002, counsel for Happ took a deposition of Hanley. Hanley testified that he placed the telephone call alleged in paragraph 18 of the Amended Complaint from Hanley's Galileo office telephone in Sturbridge, Massachusetts. Deposition transcript, pages 133–134, attached as Ex. A to Affidavit of Stephen C. Warneck, Docket No. 130.

Itemized telephone bills for a period including June 25 (Thursday), 1999, through June 30 (Tuesday), 1999, were produced by a custodian under subpoena, and became accessible to counsel for SEC as well as counsel for Happ on or before opening statements at trial.

Included in Happ's First Set of Requests for Admissions was Request No. 8 (attached as Ex. B to Warneck affidavit, Docket No. 130): "Hanley did not make a telephone call from Galileo's offices in Sturbridge, Massachusetts to Happ's residence in Weston, Massachusetts, telephone number 781–899–8081, on June 25, 1998." Responding to this request on November 7, 2002, the SEC denied, thus still asserting that Hanley did call Happ's residence from Hanley's Galileo office telephone in Sturbridge on Thursday, June 25, 1998. On September 11, 2003, SEC stipulated to the "authenticity and accuracy" of the telephone records, but not to facts that would support a conclusion of the records' completeness. See Docket No. 130 at ¶ 5. Not until halfway through the trial, when defendants' experts were waiting in the courtroom to testify as to the completeness of the phone records, did SEC stipulate to the fact that "[t]he call did not take place from Mr. Hanley's office on the 25th of June or on the 22nd, 23rd or 24th." Trial Transcript Day 6 (Docket No. 116) at 104.

I conclude that this continuing assertion that Hanley called Happ's residence on Hanley's office telephone on Thursday, June 25, 1998 was unjustified, making it appropriate under Fed.R.Civ.P. 37(c)(2) to award reasonable costs to Happ. Fed.R.Civ.P. 37(c) provides:

If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (A) the request was held objectionable . . . , or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

Here, SEC argues that exceptions (C) and (B) apply, i.e., that it had reasonable grounds to believe that it might prevail, and that in any event, the material was of no substantial importance.

I conclude, first, that SEC had no reasonable ground to believe that it might prevail on this matter. The only basis SEC counsel ever advanced for making this assertion was Hanley's deposition and trial testimony. At trial, Hanley testified:

Q. Now, where were you when you made your call to Mr. Happ?

A. My *best memory* is that I was in my office.

Q. How certain are you about that memory?

A. My *best memory* is that I was in my office.

Transcript, Trial Day 2 (Docket No. 112) ("Tr.2") at 65 (emphasis added). Similarly, during his deposition, Hanley testified:

Q. How did you go about initiating that meeting with Mr. Happ?

A. I placed a call to him I *believe* from my office to ask him if he could come in and meet with myself and Greg Riedel on Monday or Tuesday of the following week.

Q. And you say that was a phone call from your office?

A. I *believe so,* yes.

Deposition of William T. Hanley (Docket No. 132, ex. B) at 133 (emphasis added). As the emphasis shows, Hanley was equivocal about his testimony regarding the location from which he called Happ. On the other hand, the phone records, introduced in evidence as Trial Exhibit 10, show that no such call was made.

SEC's contrary argument, that deposition testimony showed that the phone records may have been incomplete, is unpersuasive. No deponent testified that the phone records were incomplete. The only deposition testimony was to the effect that the deponent could not be certain the rec-

ords were complete. Other than Hanley's testimony, SEC advanced no direct or circumstantial evidence upon which a factfinder could permissibly base a finding that the phone records were incomplete, without engaging in speculation. I rule that it was unreasonable for SEC to believe that a jury would credit Hanley's equivocal testimony over the objective phone records produced by Happ.

SEC's refusal to stipulate to the completeness of the phone records at issue is particularly unwarranted in view of the stipulation that SEC *did* make. On September 11, 2003, SEC stipulated to the "authenticity and accuracy" of the telephone records. SEC refused, however, to stipulate to the fact that Galileo received telephone service from two vendors, AT & T and Bell Atlantic, and refused to stipulate to other features of the telephone system employed at Galileo. Affidavit of Stephen C. Warneck (Docket No. 133, ex. A). This refusal was despite the deposition testimony of an individual with personal knowledge of these facts, and despite the lack of any evidence to the contrary. *Id.; see also* Deposition of Brian Towns (Docket No. 129, ex. C) at 15 ("I know our long distance carrier was AT & T and that our local carrier, Bell Atlantic, would carry all the local calls").

SEC counsel's actions imposed on Happ and his counsel the necessity, if they wished to assert their rights, of developing for use at trial adequate evidence of completeness. This position of SEC and its counsel was unwarranted and was both a cause in fact and a legal cause of Happ's incurring the fees and expenses he incurred after SEC counsel's refusal to stipulate to authenticity had become unwarranted beyond genuine doubt. This is so because the SEC and its counsel never acknowledged the completeness of the telephone records until a point in trial

after the records had been offered and the ruling that would be made by the court had become both certain and apparent.

Also without merit is SEC's argument that the fact was of no substantial importance. The proposition that Hanley called Happ on June 25, 1998, was central to SEC's version of events, as set forth in its court-filed papers through the eve of trial. Happ's demonstration that the call was not made from Galileo's office cast grave doubt on whether the call was made at all, and also could have affected the jury's view of Hanley's credibility. Although the fact was ultimately not dispositive (in view of SEC's eventual stipulation on day six of the trial, and the jury's findings in favor of SEC), the requested stipulation was nonetheless of substantial importance to the preparation of Happ's case. In these circumstances, I rule that SEC must bear the costs Happ incurred in preparing to prove this fact at trial.

I find that the statement of the fees and expenses incurred is correctly recited in the Affidavit of Stephen C. Warneck and other attachments to defendant's Supplemental Submission in Support of His Motion Pursuant to Fed.R.Civ.P. 37(c)(2) For Reasonable Expenses Incurred in Making Proof of Absence of Alleged Telephone Call (Docket No. 133).

Accordingly, the order below requires that the SEC pay forthwith, or in some other way give Happ credit for, $87,036.63 as reasonable expenses, including reasonable attorney's fees, incurred because of the unwarranted refusal of the SEC and its counsel to acknowledge the completeness of the telephone toll records.

## B. Improper Closing Argument of SEC Counsel

█ The relevant acts of the SEC's counsel in closing argument and the circumstances associated with those acts appear of record in a part of the transcript of proceedings on the last day of trial, during which the court heard oral arguments of counsel, made rulings, and fashioned a curative instruction to the jury that was received and considered by the jury on October 9, 2003, shortly before they returned their verdict.

Members of the Jury:

I am sending you two supplemental instructions.

The first instruction is not in any way related to the question you have sent me this morning. This instruction is as follows:

During closing arguments, in reference to Mr. Happ, counsel for the SEC made the following statement: "If he had truly wanted a profit in the stock, he could have sold at even higher profit if he had sold in March, April, May, or anytime earlier than June of that year." I am instructing you to disregard that statement in its entirety. Under federal law, Mr. Happ was not permitted to sell Galileo stock for a "profit" for a period of six months after his most recent purchase of Galileo stock.

The second instruction responds to the following question you sent me this morning:

*Your Honor,*

*Could you provide the jury with additional information on question number 10, subpart 4 (other instruments of interstate commerce).*

*Please provide a definition and example.*

/s/John R. Doucette

Foreperson

My instruction to you now is not to answer subpart 4 of Question 10. At the time I decided that subpart 4 should be in the Verdict form, I expected that evidence would be proffered by one or both parties on that subject. As the

case was tried, however, neither party proffered any evidence on that subject. In these circumstances, I strike subpart 4 from the form and instruct you not to answer it.

/s/Robert E. Keeton

Curative Instruction to Jury, Docket No. 137.

For the reasons explained on the record during the hearing and in the curative instruction to the jury, the identified argument of the SEC's counsel was an improper argument plainly implying a ruling of law that was contrary to the court's instructions to counsel before argument about the applicable law.

I conclude that the curative instruction given to the jury adequately addressed SEC's misstatement of law.

### III. The Verdict

The verdict in this case, returned by the jury in accordance with the court's instructions under Rule 49(a) of the Federal Rules of Civil Procedure, was a special verdict in the form of answers to questions and with no general verdict. The verdict was as follows:

1. Did defendant Robert D. Happ possess nonpublic information concerning Galileo Corporation's fiscal quarter ending June 30, 1998, when he sold Galileo stock on June 29, 1998?

    __X__YES    ____NO

2. Did defendant use nonpublic information concerning Galileo Corporation's fiscal quarter ending June 30, 1998, when he sold Galileo stock on June 29, 1998?

    __X__YES    ____NO

3. Was the nonpublic information, if any, concerning Galileo's fiscal quarter ending June 30, 1998, that defendant possessed and used when he sold Galileo stock on June 29, 1998, material?

    __X__YES    ____NO

4. Was defendant Robert D. Happ an insider in relation to his sale of Galileo stock on June 29, 1998?

    __X__YES    ____NO

5. Did he employ a manipulative or deceptive device or contrivance?

    __X__YES    ____NO

6. Did he engage in an act, practice, or course of business that operated, or, by an ordinarily prudent person in his position at the time he acted, would be expected to operate as a fraud or deceit upon some person?

    __X__YES    ____NO

7. Was each of the acts, if any, you have found in answering 1—6, done in connection with defendant Robert D. Happ's sale of Galileo stock on June 29, 1998?

    __X__YES    ____NO

8. Did defendant violate a duty of trust and confidence that he owed to Galileo Corporation and its shareholders when he sold his stock on June 29, 1998?

    __X__YES    ____NO

9. Did defendant act, in his sale of Galileo stock,

| | | | |
|---|---|---|---|
| 1. | With intent? | X YES | ____NO |
| 2. | With knowledge? | X YES | ____NO |
| 3. | With recklessness? | X YES | ____NO |

10. Did defendant use

| | | | |
|---|---|---|---|
| (1) | Mails? | X YES | ____NO |
| (2) | Telephone? | X YES | ____NO |
| (3) | Facilities of NASDAQ? | X YES | ____NO |

| October 9, 2003 | _____/s/_____ |
|---|---|
| Date | Foreperson |

Docket No. 135.

### IV. Declaratory Judgment of Violation

Taking into account the findings of the jury in the verdict recited in Part III above, I conclude that it is appropriate to

include in the judgment in this case an item of declaratory relief in which it is declared that Robert D. Happ violated prohibitions against insider trading set forth in statutes enacted by Congress and rules promulgated by the SEC.

The final judgment will include this form of declaratory relief.

## V. Injunction

■ Under First Circuit precedent, an injunction against future violations of the securities laws is available where the record includes, "at a minimum, proof that a person is engaged in or is about to engage in a substantive violation of" the securities laws. *SEC v. Sargent,* 329 F.3d 34, 39 (1st Cir.2003) (quoting *Aaron v. SEC,* 446 U.S. 680, 700–01, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980)). Precedent requires a "reasonable likelihood" of future violations, although it is not necessary to show an "imminent threat." *Sargent,* 329 F.3d at 39 (internal quotation marks and citations omitted).

> Courts consider, among other things, the nature of the violation, including its egregiousness and its isolated or repeated nature, as well as whether the defendants will, owing to their occupation, be in a position to violate again. The courts also take into account whether the defendants have recognized the wrongfulness of their conduct.

*Id.* I conclude that an injunction is inappropriate here. *Cf. SEC v. Yun,* 148 F.Supp.2d 1287, 1294 (M.D.Fla.2001) ("[A]n injunction is not appropriate" where the defendants' "actions were isolated; the SEC and the defendants agree that [a tipper] has never before revealed insider information, and [the tippee's] numerous trades on that information all occurred within a three-day time period").

Evaluating each factor articulated in *Sargent,* first, I conclude that the violation here was not egregious. Even though Happ possessed material, nonpublic information, that information was vague—he knew that "difficulties" existed, and he may have surmised something more, but he had no specific knowledge of objective inside information, such as sales figures or earnings projections. His conduct stands in contrast with the actions at issue in the cases cited in SEC's brief, in which the defendant engaged in a seventeen-month scheme to defraud investors, *SEC v. Militano,* 1996 WL 282013, *1–2, 1996 U.S.App. Lexis 12337 at *4–5 (2d Cir. 1996), or the defendant, "breaching his fiduciary duties to his customers ...,

caused his customers' accounts ... to have a negative net worth of $1.8 million...." *SEC v. Lorin,* 877 F.Supp. 192, 201 (S.D.N.Y.1995), *vacated in part on other grounds,* 76 F.3d 458 (2d Cir.1996). The conduct at issue in this lawsuit was a single trade, undertaken on a single occasion, avoiding a relatively modest loss in comparison with Happ's net worth.

Second, the evidence with respect to whether the incident was isolated is mixed. SEC identifies two violations of the securities laws that allegedly demonstrate Happ's disregard for the securities laws. The first incident SEC identifies occurred during the year before the trade at issue in this case. Happ purchased stock of CAI Wireless, Inc., on whose board he served, during a period restricted by the company's insider trading policy. At the request of the management of the corporation, he soon sold the stock—thereby violating the "six-month, short-swing profit rule," requiring disgorgement of profits. The second incident SEC identifies took place with respect to the sale of Galileo stock on June 29, 1998 at issue in this case. Two months after the sale, Happ re-purchased Galileo stock. He was later told that this transaction violated the short-swing profit rules as well. *See* Deposition of Robert D. Happ (Docket No. 77, ex. A) at 85–86.

I conclude that these incidents do not support a finding that Happ is likely to engage in insider trading in the future. Happ has advanced credible explanations for his conduct—i.e., that he had inadvertently violated the insider trading policy at CAI Wireless, and was merely trying to undo his earlier mistake, at the request of CAI Wireless management; and that he was unaware that a sale followed by a purchase add up to a violation of the short-swing profit rules. *See* Transcript, Day Four (Docket No. 114) at 41; Deposition of Robert D. Happ at 86. I rule that Happ did not act with conscious disregard to the securities laws on these occasions.

Third, with respect to whether Happ is likely to be in a position to violate the securities laws in the future, I find that Happ is retired and has no present intention to serve on the board of any publicly traded company. *See* Affidavit of Robert D. Happ (Docket No. 128) ("Happ Aff.") at ¶¶ 4, 14. I conclude that, in the future, he is unlikely to be in a position to violate the securities laws.

Fourth, with respect to whether Happ has recognized the wrongfulness of his conduct, Happ's behavior throughout trial has been consistent with setting forth a vigorous defense. He is not to be penalized for this. *See Yun*, 148 F.Supp.2d at 1294. This factor does not weigh in favor of either side.

SEC also urges me to consider the high level of scienter with which the jury found Happ acted, combined with his allegedly false statements made throughout the course of SEC's investigation. The jury found that Happ acted with scienter. For the purposes of ruling on the matter now being considered, I further assume the truth of SEC's allegations regarding Happ's false statements throughout the course of SEC's investigation. Nonetheless, I find that Happ's scienter and conduct are not sufficiently probative of his future likelihood of violating the securities laws as to outweigh the factors whose relevance and weight I have considered above.

For these reasons, the Order below does not impose injunctive relief.

## VI. Monetary Awards Against Defendant

### A. Disgorgement

■ Disgorgement of ill-gotten gains is routinely granted in insider trading cases. No statute governs the disgorgement of ill-gotten profits—rather, principles of equity provide the foundation for this penalty. *See Janigan v. Taylor*, 344 F.2d 781, 786 (1st Cir.1965) ("It is simple equity that a wrongdoer should disgorge his fraudulent enrichment."); *see also SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307 (2d Cir.1971) (noting that disgorgement of profits arises from the inherent equity power of the district courts). Courts often note that the primary purpose of disgorgement is the prevention of unjust enrichment—that is, that those who have violated the securities laws are not allowed to gain by their illegal conduct. *See Hateley v. SEC*, 8 F.3d 653 (9th Cir.1993); *SEC v. Tome*, 833 F.2d 1086, 1090 (2d Cir.1987). Accordingly, disgorgement is a powerful deterrent against misuse of material, non-public information. See *SEC v. Texas Gulf Sulphur*, 312 F.Supp. 77, 91–92 (S.D.N.Y.1970). Moreover, because disgorgement is an equitable remedy, it does not serve to punish or fine the wrongdoer, but simply serves to prevent the unjust enrichment. *See Hateley*, 8 F.3d at 656.

*Yun*, 148 F.Supp.2d at 1289–90.

Here, the parties dispute the proper method for calculating disgorgement. Counsel for the SEC argues that judgment should be awarded against Happ for all the loss resulting from the reduced value of

Happ's stock as calculated by the difference between what he sold it for ($46,758) and what he would have received for it if he had not sold until a date shortly after the public announcement in July 1998 ($12,000). *See* Trial Exhibit 14; Declaration of Cloriss A. Primavera (Docket No. 131, ex. B) (Primavera Decl.) at ¶ 3. The total disgorgement, according to SEC, should be $34,758. Primavera Decl. at ¶ 3. SEC argues that disgorgement according to this calculation would force Happ to bear the loss he otherwise avoided through his improper trading.

Counsel for Happ argues primarily that no monetary award should be made. As a first alternative, he argues that no more should be awarded than an amount calculated by subtracting from the amount for which Happ sold on June 29, 1998, the amount he paid for those shares.

In challenging SEC's mode of calculating the amount to be disgorged, Happ says SEC's reasoning rests on the premise that Happ knew, on June 29, 1998, the information Galileo disclosed in its press release on July 23, 1998. Happ argues that no evidence in the record of the trial shows that the material, nonpublic information Happ possessed bore any similarity to the news released in the July press release. Therefore, he argues, it would be inappropriate to calculate disgorgement based on Galileo stock prices shortly after July 23.

I conclude, first, that I must and do reject Happ's counter-proposal that the proper disgorgement amount is simply the amount of profit he realized by his sale. SEC's allegation is that Happ avoided a loss by selling while in possession of material, nonpublic negative information about Galileo. Happ's logic would lead to no disgorgement award whatsoever if he had happened to lose money on his sale. SEC's case is predicated upon the theory that Happ sold in order to avoid losses. I

rule that disgorgement of the loss avoided is appropriate.

Although Happ is correct that the SEC's measure of loss avoided is imprecise, I conclude that SEC's calculation should be adopted. Disgorgement, as an equitable remedy, may not be punitive. *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C.Cir.1989). Nonetheless, "calculations of this nature are not capable of exactitude [and] any 'risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty.'" *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir.1995) (quoting *First City Fin. Corp.*, 890 F.2d at 1232) (second bracketed text in original). At least one circuit has adopted a burden-shifting test, in which, after the SEC presents a reasonable approximation of an amount by which the defendant has been unjustly enriched, the burden shifts to the defendant to show that the SEC's figure is not a reasonable approximation. *See First City Fin. Corp.*, 890 F.2d at 1232.

Here, the jury found that Happ was in possession of material, nonpublic information. "Information is material only if its disclosure would alter the total mix of facts available to the investor and if there is a substantial likelihood that a reasonable shareholder would consider it important to the investment decision." *Cooperman v. Individual, Inc.*, 171 F.3d 43, 49 (1st Cir. 1999). The evidence at trial suggests that Happ knew of difficulties that were facing Galileo during its third quarter. Given the jury finding, I conclude that a reasonable investor would have known that the value of his investment in Galileo would be affected by Galileo's third quarter difficulties.

The information Galileo eventually provided investors was much more detailed than the information Happ possessed when he made his trade. I conclude, however,

that this fact does not make it inappropriate to consider the Galileo stock price in late July in determining the amount of disgorgement. The price of Galileo stock declined after the release of the July press release *because Galileo was experiencing difficulties.* Happ knew Galileo was experiencing difficulties in late June. The only difference was the specificity of the information. I rule that the late July stock prices were a reasonable approximation of what the market's reaction would have been to the public disclosure of the material nonpublic information possessed by Happ.

This conclusion is strengthened by the fact that Happ has not presented evidence of what the market's reaction would have been to the material, nonpublic knowledge he possessed. Happ, as the wrongdoer, must bear the burden of the inexactitude intrinsic in calculating hypothetical market reactions. *See Patel,* 61 F.3d at 140.

Happ sold 4,000 shares of Galileo stock on June 29, 1998 for $46,758. Trial Exhibit 14. At the close of trading on July 24, the day after Galileo's press release, stock was trading at $3/share, or $12,000 for Happ's 4,000 shares. In these circumstances, I rule that Happ avoided a loss of $34,758.

## B. Prejudgment Interest

■ SEC urges me to impose prejudgment interest. "Prejudgment interest, like disgorgement, prevents a defendant from profiting from his securities violations." *Sargent,* 329 F.3d at 40 (quoting *SEC v. O'Hagan,* 901 F.Supp. 1461, 1473 (D.Minn. 1995), *rev'd on other grounds, United States v. O'Hagan,* 521 U.S. 642, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997)). "An award of prejudgment interest is based on consideration of a variety of factors, including the remedial purpose of the statute involved, the goal of depriving culpable defendants of their unlawful gains, and unfairness to defendants." *Sargent,* 329 F.3d at 40 (quotation marks, citations, and brackets omitted).

Here, prejudgment interest should be awarded to prevent Happ from receiving the benefit of what would otherwise be an interest-free loan. *See id.* at 41 ("Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity") (quoting *SEC v. Moran,* 944 F.Supp. 286, 295 (S.D.N.Y.1996)). The jury found that Happ "acted with scienter, his conduct was not inadvertent, and he had the use of the money for a substantial period of time." *Id.* (stating that these circumstances would support an award of prejudgment interest). I rule that prejudgment interest is appropriate.

SEC submits that the appropriate rate of prejudgment interest is the rate used by the Internal Revenue Service to calculate underpayment penalties. *See* 26 U.S.C. § 6621(a)(2) (defining the IRS underpayment rate as the Federal Reserve short term interest rate plus three percentage points). I conclude that this rate is equitable in the circumstances. *See Yun,* 148 F.Supp.2d at 1293 (in awarding prejudgment interest for securities violations, "[c]ourts have adopted the IRS underpayment rate without controversy.").

I rule that the appropriate amount of prejudgment interest on $34,758, during the relevant time period, is $15,726.63.

## C. Civil Penalty

■ The Insider Trading and Securities Fraud Enforcement Act ("ITSFEA"), 15 U.S.C. § 78u–1(a)(2), permits courts to impose a civil penalty of up to "three times the profit gained or loss avoided as a result of" insider trading.

The ITSFEA civil penalties were a congressional response to the insider trad-

ing scandals of the 1980s, and were enacted to "enhance deterrence against insider trading, and where deterrence fails, to augment the current detection and punishment of this behavior." H.R. Report 910, 1988 U.S.Code Cong. and Admin.News at 6044.

*Yun,* 148 F.Supp.2d at 1295. Courts apply a number of factors in determining the appropriateness and amount of civil penalties, including

(1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the defendant's financial worth; (4) whether the defendant concealed his trading; (5) what other penalties arise as the result of the defendant's conduct; and (6) whether the defendant is employed in the securities industry.

*Sargent,* 329 F.3d at 42.

█ As previously explained, the first and second factors support the defendant. The third factor—the defendant's net worth—supports the imposition of a moderate civil penalty. Happ's net worth is approximately $1.4 million plus the value of his two homes (which together were worth approximately $1.1 million in 1998). *See* Happ Aff. at ¶ 15; Transcript, Day Four at 93. The fourth factor favors the defendant: there is no contention that Happ concealed his trading at the time. The fifth factor favors the SEC; Happ will face no repercussions other than those imposed as a result of this enforcement action. The sixth factor favors Happ—he is not employed in the securities industry.

The factors are, therefore, decidedly mixed. In imposing civil penalties, I must effectuate the Congressional intent demonstrated by ITSFEA to effect punishment on those who violate securities laws. Giving all factors addressed above their due weight, I conclude that an appropriate civil penalty is equal to one time the loss avoided, or $34,758.

In summary, the monetary judgment against Happ consists of $34,758 as disgorgement for loss avoided, $15,726.63 in prejudgment interest, and $34,758 as a civil penalty. The total is $85,242.63.

## VII. Offset or an Alternative

I find that it is more appropriate to use a form of stay of enforcement than a provision for offset to preclude unfair collection proceedings. The form of stay I adopt is a stay of enforcement of the judgment to the extent of collection of any monetary award against SEC beyond $1,794, the difference between the $87,036.63 award against SEC and the $85,242.63 award against Happ.

## VIII. Text of Judgment

Taking into account all of the rulings explained in Parts II–VII of this Opinion, and as well the reasoned grounds for these rulings, I order that the text of the judgment be as it is recited in the Final Judgment ordered, in a separate document, to be entered on the docket by the Clerk forthwith.

### Final Judgment

On September 29, 2003, this case proceeded to trial before a jury on all claims. On October 9, 2003, the jury returned a verdict making the following findings of fact:

1. Did defendant Robert D. Happ possess nonpublic information concerning Galileo Corporation's fiscal quarter ending June 30, 1998, when he sold Galileo stock on June 29, 1998?

    _X_ YES     ____NO

2. Did defendant use nonpublic information concerning Galileo Corporation's fiscal quarter ending June 30, 1998, when he sold Galileo stock on June 29, 1998?

    _X_ YES     ____NO

3. Was the nonpublic information, if any, concerning Galileo's fiscal quarter

ending June 30, 1998, that defendant possessed and used when he sold Galileo stock on June 29, 1998, material?

    _X_YES      _____NO

4. Was defendant Robert D. Happ an insider in relation to his sale of Galileo stock on June 29, 1998?

    _X_YES      _____NO

5. Did he employ a manipulative or deceptive device or contrivance?

    _X_YES      _____NO

6. Did he engage in an act, practice, or course of business that operated, or, by an ordinarily prudent person in his position at the time he acted, would be expected to operate as a fraud or deceit upon some person?

    _X_YES      _____NO

7. Was each of the acts, if any, you have found in answering 1—6, done in connection with defendant Robert D. Happ's sale of Galileo stock on June 29, 1998?

    _X_YES      _____NO

8. Did defendant violate a duty of trust and confidence that he owed to Galileo Corporation and its shareholders when he sold his stock on June 29, 1998?

    _X_YES      _____NO

9. Did defendant act, in his sale of Galileo stock,

| | | | |
|---|---|---|---|
| (4) | With intent? | X_YES | _____NO |
| (5) | With knowledge? | X_YES | _____NO |
| (6) | With recklessness? | X_YES | _____NO |

10. Did defendant use

| | | | |
|---|---|---|---|
| (1) | Mails? | X_YES | _____NO |
| (2) | Telephone? | X_YES | _____NO |
| (3) | Facilities of NASDAQ? | X_YES | _____NO |

October 9, 2003    _____/s/_____

Date          Foreperson

On the foregoing findings of fact and rulings of the court explained in the Opinion of November 25, 2003, it is ORDERED AND ADJUDGED:

(1) Judgment for defendant Robert D. Happ against the SEC in the amount of $87,036.63.

(2) Judgment for the SEC against defendant Robert D. Happ for a monetary award of $85,242.63. This includes disgorgement, prejudgment interest, and a civil penalty.

(3) This court retains jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

This court orders a stay, effective until further order of a judge of this or a higher court, of enforcement of the monetary award in Parts (1) and (2) of this judgment. This stay prohibits, until further order of a judge of this or a higher court, collection by Happ in excess of $1,794, and prohibits, until further order of a judge of this or a higher court, any collection by SEC.