

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2008

# SEC v. Lazare Inds Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4009

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"SEC v. Lazare Inds Inc" (2008). *2008 Decisions.* Paper 465.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/465

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-4009 & 08-1127
_____


SECURITIES AND EXCHANGE COMMISSION

v.

LAZARE INDUSTRIES, INC.;
RICHARD J. HARLEY; JACQUELINE KUBE

Richard J. Harley; Jacqueline Kube,
Appellants


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 96-cv-0705
(Honorable Thomas I. Vanaskie)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 26, 2008

Before:  SCIRICA, Chief Judge, HARDIMAN and COWEN, Circuit Judges

(Filed:  September 30, 2008)


_____

OPINION OF THE COURT
_____

PER CURIAM.

Richard J. Harley and Jacqueline Kube appeal pro se from the District Court's order entered September 26, 2007, and its final judgment entered January 4, 2008. For the following reasons, we will affirm the judgment of the District Court.

## I.

Harley and Kube, husband and wife, owned and operated a company called Lazare Industries, Inc. ("Lazare"), through which they provided an "ozone/oxygen enema" treatment to people suffering from HIV/AIDS and other medical conditions. From 1989 through 1996, Harley represented in various media that this treatment was a clinically-tested, patented procedure that neutralizes the virus that causes HIV/AIDS. On the basis of these representations, Harley sold unregistered shares of stock in Lazare. These sales were evidenced by stock subscription agreements, which are central to the issues on appeal. In 1996, the Securities and Exchange Commission ("SEC") instituted this civil enforcement action against Lazare, Harley and Kube, alleging, inter alia, that Harley's representations were knowingly false. Shortly after the SEC filed suit, defendants consented to a permanent injunction, which barred them from, inter alia, transferring assets during the pendency of the litigation.

Several months later, defendants were indicted on federal charges of mail fraud, wire fraud and violations of the Federal Food, Drug and Cosmetic Act. The District Court stayed the civil action pending resolution of defendants' criminal charges, which

2

ultimately resulted in convictions. During their criminal proceedings, defendants moved to suppress the subscription agreements on the grounds that they had been seized at their residence pursuant to a search warrant obtained by the Food and Drug Administration that the government conceded was defective. The District Court initially held the search illegal under the Fourth Amendment. At sentencing, however, the District Court allowed the government to use the subscription agreements to fix the appropriate amount of restitution after finding that the SEC had obtained them from an independent source – i.e., a former employee of Lazare named Dawn Loikits. The District Court sentenced Harley and Kube to terms of imprisonment and ordered Harley to pay restitution. We affirmed the criminal judgments. See United States v. Harley, C.A. Nos. 01-1823, 01-1916, 39 Fed. Appx. 789 (3d Cir. 2002). Defendants raised no issue regarding the subscription agreements on appeal.

The District Court then reopened the civil enforcement action. The SEC filed a motion to hold Harley and Kube in contempt for having transferred property in violation of the permanent injunction. After the District Court ordered them to show cause why they should not be held in contempt, defendants filed a motion to dismiss the order to show cause and the enforcement action itself, arguing that it was premised on the allegedly illegally-obtained subscription agreements. The District Court denied that motion by order entered March 3, 2006. Defendants appealed, but their appeal was dismissed for failure to prosecute after they failed to pay the filing fee. See SEC v.

3

Lazare Indus., Inc., C.A. No. 06-1856 (Dec. 6, 2006). On March 13, 2006, the District Court held defendants in contempt of the permanent injunction. Defendants did not appeal that order. Instead, they filed a motion to vacate the permanent injunction and contempt order, once again arguing that they were impermissibly based on the subscription agreements. The District Court denied that motion by order entered September 26, 2007. Defendants' appeal from that order is pending as C.A. No. 07-4009.

Thereafter, the SEC filed a motion for a final judgment directing disgorgement and the payment of pre-judgment interest and civil penalties. The District Court held a hearing on the motion, at which the SEC used the subscription agreements to establish the amount of disgorgement. Defendants once again argued that the agreements should not be considered because they were illegally obtained, and the District Court once again rejected their argument. Following the hearing, the District Court entered its final judgment on January 4, 2008. The final judgment requires Harley and Kube to pay $975,911 in disgorgement and interest and imposes a $500,000 civil penalty on Harley. Defendants' appeal from that order is pending as C.A. No. 08-1127.[1]

---

[1]The final judgment also imposes a $1,000,000 penalty on Lazare, and Harley and Kube purported to appeal on its behalf. By Clerk's order issued January 25, 2008 in C.A. No. 08-1127, they were notified that the appeal on behalf of Lazare would be dismissed unless an attorney entered an appearance on its behalf within 21 days. See Simbraw, Inc. v. United States, 367 F.2d 373, 374-75 (3d Cir. 1966); 3d Cir. LAR 107.2. No attorney has entered an appearance on behalf of Lazare. Accordingly, the appeal of Lazare is hereby dismissed.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  On appeal, defendants raise no issue regarding the District Court's denial of their motion to vacate the permanent injunction and contempt order, and the only relief that they seek is the vacation of the final judgment.  Accordingly, any potential issues that might relate solely to the order appealed from at C.A. 07-4009 are waived.  Regarding the final judgment, defendants argue that the District Court erred in allowing the use of the subscription agreements because they were seized in violation of the Fourth Amendment and that the District Court held the SEC to too low a burden of proving that it had obtained the agreements from an independent source.  Defendants also argue that the District Court abused its discretion in fixing the amount of disgorgement and civil penalties.  We reject these arguments.[2]

Defendants' first argument assumes that the exclusionary rule applies in civil enforcement proceedings brought by the SEC, which the SEC vigorously contests.  We need not decide that issue.  Even assuming that the exclusionary rule applies, defendants were collaterally estopped from relitigating the independent source issue in the civil

---

[2]We review all legal issues de novo, but review for clear error the District Court's finding of an independent source, see United States v. Provenzano, 620 F.2d 985, 1005 (3d Cir. 1980), and for abuse of discretion its rulings on the amount of disgorgement, see SEC v. Hughs Capital Corp., 124 F.3d 449, 455 (3d Cir. 1997), and civil penalties, see SEC v. Sargent, 329 F.3d 34, 38 (1st Cir. 2003).

proceeding and, in any event, the District Court's ruling on that issue was not clearly erroneous.

Collateral estoppel/issue preclusion bars relitigation of a legal or factual issue when: "(1) the issue . . . is the same as that involved in the prior action; (2) the issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." Peloro v. United States, 488 F.3d 163, 174-75 (3d Cir. 2007) (citations omitted). At their criminal sentencing, defendants specifically argued that the government could not use the subscription agreements because it had not shown that it had obtained them from a source independent of the defective FDA search warrant. The District Court specifically rejected that argument after concluding that the government had presented sufficient evidence to demonstrate that the SEC had obtained the agreements from defendants' former employee, Ms. Loikits. (CA-00328.) That ruling was necessary to the criminal judgment because the use of the documents allowed the government to prove the appropriate amount of restitution. Accordingly, all the elements of collateral estoppel are present here. See also United States v. Real Prop. Located in El Dorado County at 6380 Little Canton Rd., 59 F.3d 974, 979-80 (9th Cir. 1995) (holding that defendant in a civil forfeiture action was collaterally estopped from relitigating Fourth Amendment issue previously litigated in a criminal action), abrogation on other grounds recognized in United States v. $273,969.04 U.S. Currency, 164 F.3d 462, 466 n.3 (9th Cir. 1999); United States v. United States

6

Currency in the Amount of $228,536.00, 895 F.2d 908, 917-18, 921 (2d Cir. 1990)

(same).  Defendants did not base their challenge in the civil proceeding on any

previously-unavailable evidence or legal authority, and there is no other equitable reason

for declining to apply collateral estoppel in this case.  See National R.R. Passenger Corp.

v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 n.3 (3d Cir. 2002) (discussing equitable

exceptions to application of collateral estoppel).[3]  Moreover, even if it were proper for

defendants to relitigate this issue in the civil action, the District Court's finding of an

independent source in that action was not clearly erroneous.[4]

 Finally, defendants argue that the District Court (1) abused its discretion in fixing

the amount of disgorgement because the SEC did not offer bank records showing that

defendants actually received the amounts memorialized on the subscription agreements,

(2) failed to consider relevant factors in fixing the amount of civil penalties, and (3)

---

[3]Defendants argue that the District Court should have required the SEC to prove an
independent source in the civil proceeding by clear and convincing evidence and not
merely by a preponderance of the evidence.  Even in criminal cases, however, the
government need only prove an independent source by a preponderance of the evidence.
See United States v. Pelullo, 173 F.3d 131, 137-38 (3d Cir. 1992).  Defendants have cited
no authority suggesting that this burden is greater in civil cases.  Thus, application of
collateral estoppel is not precluded by any difference in the burden of proof.

[4]In particular, the District Court relied on (1) Ms. Loikits's testimony that she provided
the subscription agreements to the SEC (CA-00547-49, 555, 558), and (2) a sworn
declaration of John J. Heffernan, an SEC attorney and accountant, that Ms. Loikits
delivered the subscription agreements to him (CA-00356-59).  Defendants claim to have
demonstrated that it would have been physically impossible for Ms. Loikits to have
obtained the subscription agreements, but our review of the record confirms that the
District Court's rejection of that argument was not clearly erroneous.

imposed civil penalties in excess of those authorized by 15 U.S.C. §§ 77t(d)(2)(C) and 78u(d)(3)(B)(iii). Each of these arguments lacks merit. Kevin DeLacy, an SEC staff accountant, testified at length at the January 4, 2008, hearing regarding how the subscription agreements allowed him to reasonably approximate the amount of disgorgement. (CA-0071-79, CA-0086-103.) As for penalties, the statutes provide that the court shall determine the amount of penalties "in light of the facts and circumstances." 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B)(i). They also provide for a maximum penalty of $100,000 for individuals for each violation (i.e., each of Harley's at least 54 sales of stock). See id. In imposing a penalty of $500,000 on Harley, the District Court specifically discussed the "egregious" nature of his fraud and noted, correctly, that it could have imposed a larger penalty than it did. (CCA-00113-14.) In sum, the District Court acted well within its discretion and did not otherwise err in determining the amounts of disgorgement and civil penalties.

Accordingly, we will affirm the judgment of the District Court.

8