15 F.3d 1082
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 AGROINDUSTRIAS VEZEL, S.A. DE C.V., Plaintiff-Appellee,
v.
H.P. SCHMID, INC., Defendant-Appellant.
 No. 92-15078.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1993.
Decided Jan. 18, 1994.
 
 Before: GOODWIN, HUG, and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In this contract dispute, appellant, H.P. Schmid, Inc. ("Schmid"), challenges the district court's initial grant of partial summary judgment for appellee, Agroindustrias Vezel ("Vezel"), and the later summary judgment for Vezel entered by the magistrate judge to whom the case was transferred by stipulation. This is a diversity action in which California law applies.
 
 I.
 FACTS
 
 3
 Vezel is a sesame seed supplier in El Salvador, which obtains the seeds from the growers. Schmid is a sesame seed trader, which purchases the seeds and resells them to its customers. On October 28, 1988, Vezel and Schmid entered into a contract for the purchase and sale of 500 metric tons of sesame seed. Schmid agreed to pay Vezel $28.50 per 100 pounds of seed for shipment "at buyers call," between November, 1988, and January, 1989. The parties agreed upon payment as "cash against documents," meaning that Schmid must pay as billed for seed shipped by Vezel.
 
 
 4
 Before any shipments were made, Vezel contacted Schmid and requested, because floods had destroyed forty percent of El Salvador's sesame seed crop, that the contract be modified to increase the price to $29.50 per 100 pounds of seed for 300 of the 500 metric tons of seed. On December 13, 1988, Schmid agreed to the price increase, but noted in its letter to Vezel that "[w]e therefore reluctantly and under protest agree to adjust the price on 300 metric tons to USD29.50 per 100 lbs." On December 14, 1988, at Schmid's request per the "buyer's call" provision, Vezel loaded 200 metric tons of seed on the "S.S. Seamaster" headed for Japan. Vezel sent a bill for that shipment to Schmid in the amount of $125,400, which Schmid received on January 10, 1989.
 
 
 5
 In the meantime, Schmid requested that Vezel load an additional 100 metric tons of seed onto the "Lady Dona," for shipment to Japan. The "Lady Dona" was scheduled to load twice in El Salvador before sailing to Japan, on December 28, 1988 and January 20, 1989. Therefore, regardless of whether the grain was loaded onto the "Lady Dona" in December or in January, the shipment from El Salvador would reach Japan at the same time.
 
 
 6
 Schmid contends it became concerned at that point that Vezel might not uphold its end of the contract. This concern was based partly on Vezel's failure to load seed onto the "Lady Dona," and partly on rumors circulating that Vezel was not fulfilling its contracts with other buyers. Therefore, Schmid decided to withhold part of the payment for the first shipment until Schmid was assured by Vezel that the contract would be fulfilled. Schmid withheld $50,000, alerting Vezel to this action in a telex sent on January 10, 1989. The telex stated:
 
 
 7
 WILL REMIT USD75400.00 PROMPTLY. WILL PAY REMAINING USD50000 AFTER COMPLETION OF CONTRACT I.E. SHPT OF REMAINING 300 MT PER "LADY DONA" 1/17 OR "LADY ULLA" 1/24.
 
 
 8
 Schmid offered to tender the retained money if it could get adequate assurance from Vezel that performance was forthcoming.
 
 
 9
 Vezel informed Schmid that it was willing and able to continue performance if Schmid would pay the money owed. Vezel offered to fly Schmid's president to El Salvador to personally inspect the sesame seed awaiting shipment. However, Vezel was unwilling to comply with Schmid's other requested means of assurance. Finally, with Vezel unwilling to give into Schmid's demands of assurance and Schmid unwilling to pay for the remainder of the first shipment, Vezel commenced this action to recover the money owed to it by Schmid.
 
 
 10
 Schmid claimed that it did not owe the money to Vezel because Schmid was excused from performance. Schmid offered a number of arguments to support this claim. First, Schmid argued that the modification of the contract with regard to the final 300 tons of sesame seed was invalid because it was made in bad faith. Second, Schmid claimed that it was excused from performance under the doctrine of economic duress. Third, Schmid claimed that it was excused from performance because its actions were justified under California Commercial Code Sec. 2609, which allows a party to withhold performance and ask for assurance if it has reasonable grounds to believe that the other party is not going to perform. Finally, Schmid argued that it was excused from performance under California Commercial Code Sec. 2610 because Vezel's failure to ship on the December docking of the "Lady Dona" amounted to an anticipatory repudiation.
 
 
 11
 The district judge granted a motion for partial summary judgment in favor of Vezel on Schmid's claim of economic duress. Pursuant to a stipulation by the parties, the district judge ordered that the case be referred to Magistrate Judge Joan S. Brennan for further proceedings, including trial and judgment. The magistrate judge thereafter granted Vezel's motion for summary judgment on all remaining issues. The final judgment is based upon the decisions of the district judge and the magistrate judge granting summary judgments in favor of Vezel. We are thus concerned in this appeal with a summary judgment on all issues. For ease in discussion, we refer to all matters as having been decided by the district court.
 
 
 12
 We review a grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). We must determine, in viewing the evidence in the light most favorable to Schmid, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. See Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 II.
 MODIFICATION
 
 13
 Schmid argues that it is excused from performance because Vezel acted in bad faith when it requested a modification of the contract price for the final 300 tons of sesame seed. Under California law, a written contract can be modified without consideration if the modification is made in good faith. Cal.Com.Code Sec. 2209. The Uniform Commercial Code Comment to section 2209 discusses good faith contract modification:
 
 
 14
 The test of "good faith" between merchants or as against merchants includes "observance of reasonable commercial standards of fair dealing in the trade" (Section 2-103), and may in some situations require an objectively demonstrable reason for seeking a modification. But such matters as a market shift which makes performance come to involve a loss may provide such a reason even though there is no unforeseen difficulty as would make out a legal excuse from performance under Sections 2-615 and 2-616.
 
 
 15
 Cal.Com.Code Sec. 2609, U.C.C. Comment 2. We conclude that Vezel's request for a less than four percent price increase in the wake of severe crop damage from natural forces was not bad faith. There is ample evidence that Vezel's request was based on a legitimate commercial reason. We note that the official comment to section 2609 specifically states that a market shift, even if foreseen, may provide the basis for a modification of the contract. Further, although it was done "under protest," Schmid nonetheless agreed to the increase in price when it was not forced to do so under economic duress. Consequently, there are no genuine issues of material fact with regard to the modification of the price on a portion of the contract.
 
 III.
 ECONOMIC DURESS
 
 16
 Under California law, a claim of economic duress hinges on a showing of "the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." Rich & Whillock, Inc. v. Ashton Development, Inc., 204 Cal.Rptr. 86, 89 (Ct.App.1984). Therefore, Schmid would have to show that (1) Vezel's request for a partial increase in the contract price was "wrongful," and (2) that Schmid was in such a position that it had no reasonable alternative other than to capitulate to Vezel's actions. See id.; Thompson Crane & Trucking Co. v. Eyman, 267 P.2d 1043 (Cal.Ct.App.1954). Schmid failed to make a sufficient showing to establish either of those elements. These California cases illustrate the type of conduct and economic pressures that must be shown to support a claim of economic duress.
 
 
 17
 In Rich & Whillock, the California court found economic duress where a developer, with knowledge of the plaintiff's dire financial position, offered to pay the plaintiff an unfairly insufficient amount to settle a claim when the plaintiff had no alternative other than to accept. Rich & Whillock, 204 Cal.Rptr. at 91. The court ruled that the developer acted in bad faith because, although there was no dispute as to the actual amount owed, the developer knew that the plaintiff was overextended to creditors and had no valid option other than to accept the inadequate settlement. Id. at 90-91. The court then stated that, in addition to bad faith, the plaintiff must show that it had "no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." Id. at 89 (citations omitted). The court found that the plaintiff met this test because it was "faced with imminent bankruptcy if not paid" and had to accept the settlement "to avoid economic disaster." Id. at 91.
 
 
 18
 In Thompson Crane, the court found economic duress where an accountant, on the day before a tax deadline, demanded extra payment for his services above the amount already agreed to. Id. at 1045-46. The court found that the plaintiff agreed to the increase only because the plaintiff would be subject to an assessment which would result in his "financial ruin" if the tax forms were not mailed that day. Id. at 1044. The court found that because of the time constraints there was no other alternative to prevent the threatened loss; therefore, the plaintiff was excused from performance due to economic duress. Id. at 1047.
 
 
 19
 Vezel's acts do not amount to bad faith or a wrongful act of the type required under the economic duress doctrine. Vezel was not engaging in a malicious attempt to take advantage of Schmid while Schmid was helplessly backed into a corner. Nor was Vezel attempting to gain an unfair advantage or a windfall at Schmid's expense.
 
 
 20
 Further, Schmid did not face the Hobson's choice of deciding between acceding to Vezel's demand or succumbing to bankruptcy or financial ruin. Schmid's president expressly stated that the failure to deliver the remaining sesame seed under the contract would not drive Schmid into bankruptcy or financial ruin. Moreover, Schmid never paid the increased price for the remaining portion of the seed because that portion of the contract was not performed by either party. Because Schmid failed to prove the necessary elements, we conclude that there was no genuine issue of material fact regarding whether Schmid was excused from performance under the doctrine of economic duress.
 
 IV.
 REASONABLE GROUNDS FOR INSECURITY
 
 21
 Schmid argues that it was excused from performance under section 2609, which reads in relevant part:
 
 
 22
 When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.
 
 
 23
 Cal.Com.Code Sec. 2609(1) (West 1964 and Supp.1993). Schmid argues that it had reasonable grounds for insecurity with respect to Vezel's performance. First, Vezel failed to load the "Lady Dona" for December shipment. Second, Schmid heard rumors in the industry that Vezel was not fulfilling its contracts.
 
 
 24
 Although there might be a factual question as to whether Schmid had reasonable grounds for insecurity, its claim fails because under section 2609 a party is justified in withholding performance only in cases where it "has not already received the agreed return." Cal.Com.Code Sec. 2609(1). Here, Schmid withheld its performance although it had received the agreed upon return: 200 tons of sesame seeds. Schmid therefore cannot use section 2609 to excuse its failure to pay Vezel. See Cherwell-Ralli, Inc. v. Rytman Grain Co., Inc., 433 A.2d 984 (Conn.1980) (reaching same conclusion in interpreting same section of U.C.C. as found in Connecticut statute).
 
 V.
 ANTICIPATORY REPUDIATION
 
 25
 Schmid contends that it was excused from performance under California Commercial Code Sec. 2610 because Vezel anticipatorily repudiated the contract. Section 2610 states:
 
 
 26
 When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may ... (b) [r]esort to any remedy for breach ... and (c) [i]n either case suspend his own performance....
 
 
 27
 Cal.Com.Code Sec. 2610 (West 1964 and Supp.1993). An action for repudiation under this statute requires "an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." U.C.C. Comment to Sec. 2610 at n. 1. An action for repudiation also requires that the repudiation "substantially impair[ ] the value of the contract." Id. We conclude that the facts in this case are not sufficient to establish either necessary element.
 
 
 28
 Schmid's contention that it was excused from performance under section 2610 hinges upon Vezel's failure to load the seed on the December docking of the "Lady Dona." Because Vezel did not expressly repudiate the contract, Schmid would only be correct if Vezel's actions "render[ed] performance impossible or demonstrate[d] a clear determination not to continue with performance." Although Vezel failed to load seed onto the "Lady Dona" in December, Vezel might still have fully performed its obligations by loading the "Lady Dona" during its January stop in El Salvador. The record shows that Vezel was willing and able to continue with the contract if Schmid would remit the $50,000 owed to Vezel. We conclude that Vezel's actions neither rendered performance impossible, nor demonstrated a clear determination not to continue with its performance.
 
 
 29
 Further, the undisputed facts also establish that Vezel's actions did not "substantially impair the value of the contract" to Schmid. Vezel's failure to load the seed on the "Lady Dona" in December had no effect on the value of the contract because regardless of whether the seed was loaded in December or in January it would have arrived in Japan on the same date.
 
 
 30
 Consequently, we conclude that the district court did not err in granting summary judgment in favor of Vezel on the issue of anticipatory repudiation.
 
 VI.
 DENIAL OF MOTION TO RECONSIDER
 
 31
 Schmid claims that the district court abused its discretion in denying Schmid's motion to clarify and reconsider the summary judgment order. Specifically, Schmid contends that the district court did not base its decision on the full scope of legal and factual issues necessary to grant summary judgment. Schmid contends that because his initial declarations were not sufficient for the court to reach a correct legal decision, the court should have reconsidered its order in light of subsequent declarations by Schmid. We disagree.
 
 
 32
 In reviewing a denial of reconsideration, we must uphold the district court's decision if the appellant presented no new arguments in his motion that had not already been raised in the opposition to the summary judgment. Taylor v. Knapp, 871 F.2d 803, 805 (9th.Cir.), cert. denied, 403 U.S. 868 (1989); Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir.1985). Schmid's subsequent declarations raised no issues that were not raised prior to the summary judgment order. In fact, Schmid states in its opening brief that the subsequent declarations only "more fully explained ... key issues." Consequently, we hold that the district court did not abuse its discretion in denying Schmid's motion for reconsideration and clarification of the summary judgment order.
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3