# United States Court of Appeals
## For the First Circuit

No. 06-1324

ROBERT D. HAPP,

Plaintiff, Appellant,

v.

CORNING, INC. and CORNING NETOPTIX, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before
Boudin, Chief Judge,
Selya, Circuit Judge,
and Schwarzer,[*] Senior District Judge.

Gary C. Crossen with whom Rubin and Rudman, LLP was on brief for appellant.
Jonathan Sablone with whom Michael L. Cornell and Nixon Peabody LLP were on brief for appellees.

October 20, 2006

---

[*]Of the Northern District of California, sitting by designation.

**BOUDIN, <u>Chief Judge</u>.**  This appeal, involving issues of indemnification and duress, arises out of easily described events. From 1995 to 2000, Robert Happ served as a director of Galileo (later renamed NetOptix), a company that has now become a subsidiary of Corning, Inc.  During his service as a director, Happ was covered by provisions, common in modern corporations, providing indemnification for Happ for liability he might incur on account of directorship.

Using the language of Delaware law, Del. Code Ann. tit. 8, § 145(a) (2006), the company provided (through by-law and contract) for indemnification so long as Happ "acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Company . . . ."  The company also agreed to advance upon request expenses for any covered lawsuit, provided that the director execute an undertaking to repay the advances "if it shall ultimately be determined that [the employee] is not entitled to be indemnified against such expenses . . . ."

On April 20, 1998, Galileo held a board meeting with Happ--chair of the board's audit committee and a financial expert--participating by telephone.  The board was told of business problems whose impact on second quarter earnings was small but which could cause a greater impact in the third quarter if not resolved.  By late June, the company was having difficulties and

-2-

the chief executive officer, William Hanley, decided to seek Happ's advice.

According to his later testimony, Hanley left two voice-mail messages for Happ--one on Thursday, June 25, 1998, and the other on the Sunday following; each message stated that the company was having "some difficulties" with its third quarter and requested a meeting with Happ early the following week. On Monday, Happ called Hanley's assistant to schedule a meeting; the same day, Happ sold all of his 4,000 shares of the company's stock for about $47,000.

In late July 1998, the company revealed that its third quarter difficulties had produced a net loss of $3.3 million instead of the forecast profit of $160,000. The stock price fell from $8.25 to $3 per share (and Happ then purchased 5,000 shares). After an investigation, the Securities and Exchange Commission in October 2000 filed a civil complaint against Happ charging that he had traded on material, nonpublic information when he sold his 4,000 shares in June 1998. 15 U.S.C. §§ 77q(a), 78j(b) (1994).

At the time that Happ sought advances to cover the cost of his defense, the company had become a subsidiary of Corning, renamed Corning NetOptix. Corning required Happ to sign an undertaking in which he agreed to repay Corning for defense costs if it were "finally determined" that he "wrongfully used material non-public information of Galileo Corp. . . . for personal gain,

either with intent or recklessly, in selling shares of Galileo stock."

This arrangement was agreed to between Corning and Happ's counsel, but only after unfriendly negotiations that lasted until March 2001. Happ says that Corning refused to provide him with pertinent documents and denied any obligation to advance funds in this case. Happ also asserts that he was under financial pressure due to ongoing and foreseeable defense costs. Corning eventually paid $878,877.92 to cover much of Happ's counsel fees.

In July 2003, Happ sued Corning and Corning NetOptix, primarily over how much Corning should advance for counsel fees. In the midst of this private lawsuit, the SEC enforcement action concluded when, on October 9, 2003, a jury found that Happ was liable for insider trading. He was ultimately ordered to pay $34,758 as disgorgement, a penalty in the same amount, and substantial interest. SEC v. Happ, 295 F. Supp. 2d 189 (D. Mass. 2003), aff'd, 392 F.3d 12 (1st Cir. 2004).

Following the final decision in the SEC case, Corning and Corning NetOptix filed a counterclaim in Happ's district court action against them, seeking repayment of Corning's advances to Happ. The district court thereafter held on summary judgment that the undertaking required the repayment and had not been secured by duress (as Happ claimed). Corning was awarded repayment in the

-4-

amount of $878,877.92.  Happ v. Corning Inc., No. 03-11258-GAO, 2005 U.S. Dist. LEXIS 39554 (D. Mass. Nov. 28, 2005).

Happ now appeals, arguing that duress vitiated the undertaking or at least was an issue for the jury.  Alternatively, he says that the undertaking, if valid, should be read in light of the indemnification agreement and, so read, does not require repayment because there is at least a genuine issue of material fact as to whether Happ had acted in good faith and not adversely to the company.  The grant of summary judgment is reviewed de novo, drawing inferences in favor of Happ.  Thomas v. Eastman Kodak Co., 183 F.3d 38, 47 (1st Cir. 1999), cert. denied, 528 U.S. 1161 (2000).

Both defendant companies are incorporated in Delaware and the parties assume without discussion that the Delaware statutory standard in section 145--the good faith/not adverse to language quoted above--governs indemnification unless narrowed by the undertaking.  The parties also agree that Massachusetts law governs the duress claim and the construction of the undertaking, although they add that Delaware law on duress is similar to that of Massachusetts.

A contract signed under duress, including economic duress, is not binding under Massachusetts law, but a party claiming to have entered into a contract under duress has the burden of showing that (1) he has been the victim of some unlawful

-5-

or wrongful act or threat; (2) the act or threat deprived him of his free or unfettered will; and (3) due to the first two factors, he was compelled to make a disproportionate exchange of values.[1]

Happ's claim of duress fails at the first of these hurdles. Physical duress is almost always wrongful but much commercial bargaining involves economic pressure; "absent an improper threat, the driving of a hard bargain is not duress." 7 J. Perillo, Corbin on Contracts § 28.3, at 47 (rev'd ed. 2002). Whether or not pressure existed, Corning's insistence on the undertaking was not unlawful or wrongful within the meaning of the duress doctrine.

True enough, Happ already had a bargain--his by-law and contract-based right of indemnification--as well as an advance conditioned on a promise to repay if indemnification proved unwarranted. Yet the contract and the by-law did not say precisely how the undertaking should be phrased or whether the company had a right to insist on spelling out the circumstances in which Happ would not be entitled to indemnification.

Happ's legal position--that the undertaking should have been phrased solely in terms of Delaware law--was plausible and perhaps right; but Corning had some basis for its own position.

---

[1] Int'l Underwater Contractors, Inc. v. New Eng. Tel. & Tel. Co., 393 N.E.2d 968, 970 (Mass. App. Ct. 1979) (quoting 13 W. Jaeger, Williston on Contracts § 1617, at 704 (3d ed. 1970)); accord Ismert & Assocs., Inc. v. New Eng. Mut. Life Ins. Co., 801 F.2d 536, 544 (1st Cir. 1986).

This is so because Delaware law is unclear as to whether Happ could ever be indemnified if he lost an insider-trading suit and, further, because the company had even more reason to assert that he would not be entitled to be indemnified under Delaware law if he lost this suit.

We put to one side the argument that federal law--although only by implication--forbids indemnification for federal regulatory violations like insider trading. This is a view taken by some circuits for reasons explained in those decisions;[2] but our circuit has not ruled on the issue and arguments can be made both ways. Neither side has even adverted to the federal issue and we need not pursue it.

Yet even under Delaware law, it is debatable whether an insider-trading violation can ever be "not opposed to" the best interests of the company. There is respectable commentary that Delaware law permits indemnification for at least some violations of this type;[3] but one could also argue that insider trading

---

[2]E.g., First Golden Bancorporation v. Weiszmann, 942 F.2d 726, 728-29 (10th Cir. 1991); Globus v. Law Research Serv., Inc., 418 F.2d 1276, 1288-89 (2d Cir. 1969), cert. denied, 397 U.S. 913 (1970); see also Raychem Corp. v. Fed. Ins. Co., 853 F. Supp. 1170, 1176-77 (N.D. Cal. 1994).

[3]See Joseph Warren Bishop, Jr., The Law of Corporate Officers and Directors: Indemnification and Insurance § 6:7 (2005); Joseph F. Johnston, Jr., Corporate Indemnification and Liability Insurance for Directors and Officers, 33 Bus. Law. 1993, 1996-98 (1978).

inherently damages a company by poisoning relations with current and prospective shareholders who supply the capital.

Thus, Corning's insistence on its phrasing of the undertaking was not unreasonable, although this position might not have prevailed in court. Further, if Happ disputed Corning's position--as he certainly could--and insisted on an undertaking phrased solely in terms of the Delaware standard, he had a straightforward remedy. He could have sued Corning immediately for declaratory judgment in his favor on his claim for an advance qualified only by section 145's language, and moved for summary judgment. See, e.g., Ismert, 801 F.2d at 549.

Whatever financial pressure Happ faced, there is no evidence that bankruptcy imminently threatened. Indeed, his full liability if he lost the SEC suit appears to have been pretty modest; his main problem was legal bills that would be incurred over a period of several years. Neither his immediate risks, nor longer term consequences of losing the SEC suit, prevented him from seeking a declaratory ruling as to the advance.

Happ says that the question of how much pressure he was under presented a factual issue that should have been presented to the jury rather than resolved on summary judgment. This argument is debatable: Happ's affidavit says that he was in financial peril and inferences were to be drawn in his favor; yet the affidavit is

quite vague as to the details of the threat. Either way, Happ had the option of suing rather than signing.

So even if a jury could find that Happ was under financial pressure, Corning had a plausible, if debatable, position that the undertaking it sought was within its rights; and Happ had a legal remedy if he disputed this position. Until a court clarified its obligation, Corning no more abused its position by refusing to advance funds without the requested undertaking than did Happ by insisting on payment without the undertaking sought for Corning.

The case law is consistent with our view. A few courts may confine "wrongfulness" in the duress doctrine to conduct actually illegal, but most extend the term to blameworthy conduct in a larger sense.[4] However, it is clear enough from the case law that an act is not wrongful in this sense if there is a good faith belief by the "pressuring" party that its position represents a plausible one to take under a governing contract.[5] The result

---

[4]Grace M. Giesel, A Realistic Proposal for the Contract Duress Doctrine, 107 W. Va. L. Rev. 443, 488-90 (2005). Compare Quigley v. KPMG Peat Marwick, LLP, 749 A.2d 405, 411-12 (N.J. Super. Ct. 2000), with Hurd v. Wildman, Harrold, Allen & Dixon, 707 N.E.2d 609, 614-15 (Ill. Ct. App. 1999).

[5]See Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320, 1331 (Fed. Cir. 2003), cert. denied, 541 U.S. 987 (2004); Agroindustrias Vezel v. H.P. Schmid, Inc., 15 F.3d 1082, 1994 WL 12342, at *3-4 (9th Cir. 1994) (unpublished opinion).

would be otherwise if Corning's legal position were absurd or otherwise evidently taken in bad faith.[6]

Thus, the duress claim was properly rejected on summary judgment; and Happ's obligation to repay is governed by the undertaking. The undertaking said Happ had to repay the advance if it was "finally determined" that he "wrongfully used material non-public information of Galileo Corp. . . . for personal gain, either with intent or recklessly, in selling shares of Galileo stock." The jury in the SEC suit returned a special verdict saying just this.

The jury found, <u>inter alia</u>, that Happ was an insider who possessed and used nonpublic information regarding Galileo when he sold his stock in that company; that he engaged in an act which operated or would by a reasonable person have been expected to operate as a fraud or deceit upon some person; that he violated a duty of trust and confidence that he owed to Galileo and its stockholders; and that he acted with intent. <u>SEC</u> v. <u>Happ</u>, 295 F. Supp. 2d at 195.

Happ nevertheless argues that the undertaking should be read broadly as adopting the test of Delaware law. He says first that related documents (here, the by-law/contract provisions and

_____

    [6]<u>Totem Marine Tug & Barge, Inc.</u> v. <u>Alyeska Pipeline Service Co.</u>, 584 P.2d 15, 22 (Alaska 1978); <u>Rich & Whillock, Inc.</u> v. <u>Ashton Dev., Inc.</u>, 204 Cal. Rptr. 86, 89-90 (Ct. App. 1984); <u>Int'l Underwater Contractors</u>, 393 N.E.2d at 971.

the undertaking) should be read harmoniously. Such a doctrine exists, is well settled as to provisions in the same agreement, e.g., Kinek v. Paramount Communications, Inc., 22 F.3d 503, 509 (2d Cir. 1994) (citing Restatement (Second) of Contracts § 202(2) (1981)), and can also play a role in the reading of distinct but related documents that concern the same transaction, see 11 R. Lord, Williston on Contracts § 30:26, at 239-53 (4th ed. 1999), but the doctrine applies primarily in cases of uncertainty and cannot undo plain language which makes perfect sense in context.

Even in the case of contemporaneous documents, the notion that instruments should be read together is not mechanical. See 11 Lord, Williston on Contracts, at 247-48. Here, the undertaking was made at a later date than the contract and by-law provisions; and the circumstances--including Corning's insistence and Happ's protests--confirm what is evident from language alone: that the very purpose of the undertaking was to supply a restrictive gloss that Corning would have favored and Happ would have opposed.

Happ also says that one of the purposes for the "not inconsistent with" language in the Delaware law was to permit indemnification in insider-trading cases. See note 3, above. That may be so but this works against Happ's own claim that the undertaking replicates the statute. The arguable gap between what Delaware law might permit and what Corning was willing to do

explains why Corning sought an undertaking more restrictive than the wording of the by-law and contract obligations.

As it happens, Happ's claim to indemnification would probably fail even if the undertaking were phrased solely in the language of section 145. This is so because, given the jury verdict in the enforcement action, Happ could not easily meet either of the two requirements of Delaware law--namely, that the conduct to be indemnified have been (1) in good faith and (2) not opposed to the best interests of the company.

It is hard to see how the good faith test could be satisfied if Happ knowingly violated a federal regulatory statute aimed at protecting the public. Happ does not claim to have been ignorant of insider-trading restrictions; rather, he argued in the enforcement case that his sale of shares was not prompted by inside knowledge but rather by a need for cash. It is apparent from the jury's verdict that it did not agree.

Similarly, even if an act of insider trading might occur without being adverse to the interests of the company, that would not appear to help Happ: the jury's special verdict in this case found that Happ had violated a duty of trust and confidence owed to the company and its stockholders. Either a finding of bad faith or of opposition to company interests would bar Happ's claim under Delaware law. Here the jury appears to have made both.

We do not rely upon the apparent bar of Delaware law. Whether Happ is bound by the jury findings has not been litigated on this appeal, and perhaps the surface reading of the findings in the SEC enforcement action could be disputed. Still, despite the arguments Happ has ably presented, the SEC verdict may well have doomed Happ's claim at the start.

<u>Affirmed</u>.