

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2006

# SEC v. Johnson

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4114

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"SEC v. Johnson" (2006). *2006 Decisions*. Paper 1318.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1318

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4114
_____

SECURITIES AND EXCHANGE COMMISSION

v.

ED JOHNSON,
Appellant

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil No. 02-cv-05490)
District Judge: Honorable Garrett E. Brown

_____

Submitted Under Third Circuit LAR 34.1(a)
March 24, 2006

Before: ROTH, RENDELL and AMBRO, Circuit Judges.

(Filed:   April 5, 2006)
_____

OPINION OF THE COURT
_____

PER CURIAM

        Ed Johnson, proceeding pro se, appeals from an order entered by the United States

District Court for the District of New Jersey, granting permanent injunctions, ordering

disgorgement, and imposing civil monetary penalties, following a jury verdict in favor of

the Securities and Exchange Commission ("SEC") in this civil law enforcement action.

For the reasons that follow, we will affirm.

                                    I.

Because we write only for the parties, who are familiar with the facts, we will not recite them except as necessary to the discussion. In November 2002, the SEC filed a complaint alleging that Johnson committed securities fraud by causing his company, MERL Holdings, Inc.com ("MERL"), to file with the SEC two registration statements that contained numerous misrepresentations and omissions, by issuing false and misleading press releases, and by trading on inside information. Following a two-week trial, the jury returned a verdict in favor of the SEC, finding that Johnson violated Section 10(b) of the Securities Exchange Act[1] and Rule 10b-5 promulgated thereunder,[2] as well as Section 17(a) of the Securities Act,[3] and that he engaged in insider trading in violation of the same provisions.

After hearing additional arguments, the District Court issued an order (1)

_____

[1] Section 10(b) of the Exchange Act prohibits "manipulative" or "deceptive" conduct "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b).

[2] Rule 10b-5 proscribes (1) the employment of any "device, scheme or artifice to defraud;" (2) the making of "any untrue statement [or omission of] material fact;" and (3) the engagement "in any act, practice, or course of business which operates . . . as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

[3] Section 17(a) makes it unlawful for any person in the offer or sale of any security to (1) "employ any device, scheme, or artifice to defraud"; (2) "obtain money or property by means of any untrue statement [or omission] of a material fact"; or (3) "engage in any transaction, practice, or course of business which operates . . . as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a).

permanently enjoining Johnson from committing future violations of the federal securities law; (2) barring him from serving as an officer or director of a public company; (3) barring him from participating in an offering of "penny stock"; (4) requiring him to disgorge $42,262 in profits from his illegal insider trading, plus prejudgment interest; (5) imposing a penalty of $42,262 for insider trading; and (6) imposing a civil penalty of $120,000. Johnson timely appealed. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1292(a)(1).

## II.

Johnson argues that the evidence presented at trial was not sufficient to "support a finding of a knowing or reckless violation." We will not overturn a jury verdict "unless the record is critically deficient of that quantum of evidence from which a jury could have rationally reached its verdict." Swineford v. Snyder County, 15 F.3d 1258, 1265 (3d Cir. 1994). "We have previously held that the scienter required for securities fraud includes recklessness," which is defined as "[h]ighly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." S.E.C. v. Infinity Group Co., 212 F.3d 180, 192-93 (3d Cir. 2000) (citing Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033 (7th Cir. 1977)).

At trial, the SEC presented evidence that Johnson caused MERL to file with the SEC registration statements that consolidated MERL's assets and revenues with those of

3

a company, Essex Industries, Inc. ("Essex"), over which it exercised no control.[4] An

expert called by the SEC testified that it was not appropriate under Generally Accepted

Accounting Principles for the Essex assets and revenues to be consolidated with those

contained in MERL's financial statements. The evidence also established that Johnson

knew that the registration statements overstated the value of assets that MERL had

acquired from Hanold Schoolwear, Inc. and Hanold Bookstores, Inc. ("the Hanold

entities").[5] The SEC also introduced evidence indicating that Johnson had misrepresented

his personal background on the registration statements by failing to disclose a prior

criminal conviction. Furthermore, the SEC presented evidence that, between June 1998

and November 1999, Johnson caused MERL to issue several press releases containing

false and misleading information, and that Johnson sold his stock in MERL during the

---

[4] Johnson testified that MERL acquired Essex in May 1996 from an individual named Charles Weeden. Weeden later filed a state court lawsuit seeking rescission of the sale and, in December 1996, the state court enjoined Johnson from "taking any action to interfere with the day to day operations of Essex." In May 1998, Johnson and Weeden entered into a security agreement pursuant to which Johnson and MERL would have no control over Essex. Johnson knew, however, that Essex's operating results were consolidated in MERL's financial statements from 1997 and 1998. Those financial statements were included in the registration statements filed with the SEC in January and May 2000.

[5] According to Johnson's testimony, MERL acquired certain assets from the Hanold entities in December 1998 in exchange for stock in MERL. Shortly after the acquisition, however, Johnson realized that the assets were worth significantly less than the value represented by the sellers. Consequently, MERL filed a claim in arbitration, alleging that it had been the victim of fraud and misrepresentation. Nevertheless, the valuation of the assets provided on the registration statement was based on the face value of the stock MERL had given the sellers in exchange for the assets, rather than on the actual value of the assets.

4

same period.

Johnson alleges that he relied on MERL's accountants and auditors in filing the registration statements.  Good faith reliance on the advice of an accountant or another professional has been recognized as a viable defense to scienter in securities fraud cases.  See SEC v. Goldfield Deep Mines Co. of Nev., 758 F.2d 459, 467 (9th Cir. 1985).  That defense is available, however, only when all pertinent facts are disclosed to the professional.  See Markowski v. S.E.C.,34 F.3d 99, 104-05 (2d Cir. 1994).  Notably, Johnson did not tell the auditors about a state court injunction and security agreement that effectively prevented MERL from exercising control over Essex.  In addition, Johnson supplied to the auditors various baseless assumptions about a customer list acquired from the Hanold entities, which resulted in their giving the list an inflated value.  Under these circumstances, we conclude that there was ample evidence upon which the jury could have found Johnson reckless.[6]

III.

Johnson also argues that the District Court improperly instructed the jury concerning the scienter required for securities fraud.  Where, as here, a party fails to

---

[6] We also note that there is no merit to Johnson's unsupported contentions that the SEC should have permitted him to revise the registration statements before filing its complaint, that MERL's withdrawal of the registration statements absolves him of liability, that his failure to disclose his criminal conviction was a mere technical violation, and that "there was no evidence to connect the past [stock] trades with the alleged errors in the Company filings."

object to a jury instruction, we may review for "plain error in the instructions affecting substantial rights." Fed. R. Civ. P. 51(d)(2); Bostic v. Smyrna School Dist., 418 F.3d 355, 359 (3d Cir. 2005). Johnson objects to what he characterizes as the District Court's statement "that the [SEC] could prove recklessness by inference, under the right circumstances." He contends that the evidence "did not present a picture of a man in disregard of any duties or obligations." As discussed above, however, the evidence at trial was sufficient to demonstrate that Johnson's conduct was highly unreasonable. In addition, contrary to Johnson's suggestion, it was permissible for the District Court to instruct the jury that it could determine Johnson's state of mind based on circumstantial evidence. See Herman & MacLean v. Huddleston, 459 U.S. 375, 390 n.30 (1983) (noting that circumstantial evidence can constitute proof of scienter in fraud cases). Johnson also alleges that the instruction "seems to excuse the jury from any further deliberation if they simply believe, as a subjective belief, that Johnson was reckless." The instruction made clear, however, that the jury's finding must be based upon evidence. Indeed, the District Court stated that the "burden is on the SEC to prove fraudulent intent and consequent lack of good faith by a preponderance of the evidence." Accordingly, the District Court did not plainly err in instructing the jury.

IV.

We next consider Johnson's argument that the District Court erred by allowing the SEC to examine him concerning his prior criminal conviction. Because the District

6

Court's evidentiary ruling was made pre-trial at an *in limine* hearing, the District Court's decision is reviewed for abuse of discretion. See Walden v. Georgia-Pacific Corp., 126 F.3d 506, 517 (1997). In 1990, Johnson, who was then chief executive officer of a savings and loan, was convicted of misapplication of funds. However, a registration statement filed by MERL with the SEC indicated that MERL had no record of officers or directors who had been involved in legal proceedings material to an evaluation of their ability or integrity. The District Court ruled that the fact of Johnson's conviction was relevant to the SEC's claim that the registration statement contained a misrepresentation. This was not an abuse of discretion. In addition, Johnson's counsel elicited testimony from Johnson concerning the allegedly extenuating circumstances of the conviction, and in so doing "opened the door" for the SEC to more extensively question Johnson about the offense. Cf. United States v. Irizarry, 241 F.3d 273, 307 (3d Cir. 2003) ("'When a defendant offers an innocent explanation [for his criminal conduct] he "opens the door" to questioning into the truth of his testimony....'" (alteration in original) (quoting United States v. Payton, 159 F.3d 49, 58 (2d Cir. 1998))). Finally, there is no indication that the District Court barred Johnson from presenting additional evidence concerning his conviction, as he suggests.

V.

Johnson also challenges the assessment of penalties, which we review for abuse of discretion. See S.E.C. v. Sargent, 329 F.3d 34, 38 (1st Cir. 2003). According to Johnson,

7

the penalties "far outweighed any harm from [his] conduct." The District Court, however, considered the relevant factors and properly concluded that they justified imposition of the various penalties. For instance, although the SEC sought civil monetary penalties totaling $600,000, the District Court imposed a fine of only $120,000 because "the actual loss was minimal." See generally 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).[7] Moreover, even though the District Court was authorized by statute to impose a penalty of up to "three times the profit gained or loss avoided as a result of" the insider trading, see id. § 78u-1(a)(2), it "required Johnson to pay the insider trading penalty of one times his illegal profits" in light of the "small amount" of those profits. In enjoining Johnson from committing future securities violations, the District Court found that his conduct was egregious and persistent, that he remained in a position where future violations of federal securities law would be possible, and that he maintained at trial that he was blameless. The District Court's decision to permanently bar Johnson from serving as an officer or director of a public company was based on the additional facts that he had previously committed breaches of fiduciary duty (as evidenced by his 1990 conviction for misapplication of funds), that he committed the fraud while he was Chief Executive Officer and Chairman of the Board at MERL, that the jury found that he acted knowingly or recklessly, that he gained over $40,000 from his insider trading of MERL stock, and that he is likely to perpetrate fraud again. The District Court also permanently prohibited

---

[7]Because Johnson's violations occurred before February 2, 2001, the applicable inflation-adjusted penalty should be $110,000. See 17 C.F.R. § 201.1001 & tbl. I.

8

Johnson from offering "penny stock" to protect the investing public from future fraud, and ordered Johnson to disgorge a sum equal to the amount of his profit from insider trading.  Under these circumstances, we are satisfied that the District Court acted within its discretion.

Accordingly, we will affirm the order of the District Court, except as modified by footnote 7.